IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BOBBY PITTMAN, M.D. and § <br> BiOS FAMILY CLINIC P.A. § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> METHODIST HEALTHCARE SYSTEM § <br> OF SAN ANTONIO, LTD., L.L.P. and § <br> MEDINA COUNTY HOSPITAL § <br> DISTRICT d/b/a MEDINA HEALTHCARE § <br> SYSTEM d/b/a MEDINA REGIONAL § <br> HOSPITAL f/k/a MEDINA COMMUNITY § <br> HOSPITAL, § <br> § <br> Defendants. § | | CAUSE NO.: 5:14-cv-615 |

## COMPLAINT

### Parties

1.  Dr. Bobby Pittman is a resident of Medina County, Texas. He may be served through his attorneys of record, Gunn, Lee & Cave, P.C., 300 Convent, Suite 1080, San Antonio, Texas 78205.

2.  BiOS Family Clinic, P.A. is a Texas professional association having a principal address of 703 Highway 90 E., Suite 108, Castroville Texas 78009. BiOS may be served through its attorneys of record, Gunn, Lee & Cave, P.C., 300 Convent, Suite 1080, San Antonio, Texas 78205.

3.  Methodist Healthcare System of San Antonio, Ltd., L.L.P. (Methodist) is a Texas corporation that may be served through its registered agent, Capital Corporate Services, Inc., 800

Brazos, Suite 400, Austin, Texas 78701.

4. The Medina County Hospital District d/b/a Medina Healthcare System d/b/a Medina Regional Hospital f/k/a Medina Community Hospital (the District) may be served through its Chief Executive Officer, Janice Simmons, at 3100 Ave. E, Hondo, Texas, 78861.

### Jurisdiction and Venue

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1338, and § 1367.

### Statement of Facts

6. In April 2010, Dr. Bobby Pittman started working as an independent contractor for the Medina County Hospital District (the District).

7. The District is the owner of Medina Regional Hospital and three rural health clinics in Medina County: the Medical Clinic of Castroville, the Medical Clinic of Hondo, and the Medical Clinic of Devine.

8. Pittman was recruited by the District from Missouri, where he had a prosperous family practice. As part of the recruitment, the District told Pittman they anticipated significant patient growth over the short term.

9. Pittman signed a one-year contract with the District with the hope that patient volume would grow over the next year.

10. As part of his contract, he performed outpatient care at the Medical Clinic of Castroville during the weekdays while also providing periodic outpatient care at the Medical Clinic of Hondo on Saturday mornings.

11. Pittman also performed inpatient care at Medina Regional Hospital along with surgeries and deliveries. Pittman also participated in a medical "call" rotation for Medina

Regional Hospital. In addition, Pittman provided medical coverage and "back-up" call for other physicians at Medina Regional Hospital.

12. After Pittman contracted with the District, the District entered an agreement with Methodist concerning management of the District.

13. As part of this agreement, Methodist took over management of the District's facilities and acted as agent for the District.

14. By April 2011, Pittman's practice at the Medical Clinic of Castroville showed little patient volume or growth.

15. The District offered Pittman a 6-month extension to Pittman's contract with the hopes that Pittman's practice would grow.

16. But by summer 2011, Pittman notified the District that he would leave the Medical Clinic of Castroville to start an independent practice in Castroville.

17. Approximately thirty (30) days before September 30, 2011, Pittman posted a sign at the Medical Clinic of Castroville indicating he was relocating. A copy of the front and back of the sign is attached hereto as Exhibit A.

## BiOS Family Clinic

18. Pittman's last day under contract with the District was September 30, 2011, though he maintained hospital privileges with Medina Regional Hospital after that date.

19. On October 1, 2011, Pittman opened BiOS Family Clinic in Castroville. The sign displayed in Pittman's office is attached as Exhibit B.

20. Pittman informed his patients about his departure from the Medical Clinic of Castroville and his new status as an independent physician in both mailings and posters.

21. After BiOS opened, existing and potential patients became confused about Pittman's affiliation.

22. Patients that called the Medical Clinic of Castroville asking for Dr. Pittman were scheduled an appointment at that clinic with Pittman, despite that he no longer worked there. But after arriving for their appointments, these patients would instead be seen by a physician's assistant, nurse practitioner, or other medical services provider.

23. As a result, Pittman lost revenue for the services provided to these patients.

24. As another example, BiOS received patients purporting to have scheduled an appointment to see Pittman, but BiOS would have no record of any such appointment.

25. Subsequent inquiry revealed it to be the Medical Clinic of Castroville or the Medina Regional Hospital that scheduled the appointment.

### *Welcome to Life®*

26. In November 2011, BiOS applied for federal registration of the trademark WELCOME TO LIFE in connection with the medical clinic.

27. U.S. Registration No. 4269521 for WELCOME TO LIFE issued on January 1, 2013 to BiOS in International Class 44. Exhibit C is a true and correct copy of the certificate of registration for WELCOME TO LIFE, U.S. Registration No. 4269521.

28. Since the date of opening of Pittman's office on October 1, 2011, numerous employees of Defendants have been inside of Pittman's office. Those employees of Defendants would see the signage on the wall, which signage included the mark WELCOME TO LIFE (see Exhibit D).

29. The fax cover sheet for Dr. Pittman's office also includes the mark WELCOME

TO LIFE. Numerous faxes have gone back and forth between Dr. Pittman's office and the Defendants. A typical example is attached hereto as Exhibit E.

30. After the registration for WELCOME TO LIFE issued, Methodist began using WELCOME TO LIFE as part of an advertising campaign.

31. This advertising campaign was extensive and included print, online, and television advertising.

32. As one example, Methodist placed a multiple-page advertisement in the magazine *San Antonio Woman* that used WELCOME TO LIFE to advertise and promote Methodist's medical services. Exhibit F is a true and correct copy of an advertisement placed in *San Antonio Woman* on behalf of Methodist.

33. At the time of the advertisement, Methodist and the District knew (or should have known) of BiOS's prior use of WELCOME TO LIFE.

34. At the time of the advertisement, Methodist and the District knew (or should have known) that BiOS had a federal registration for WELCOME TO LIFE.

35. After Methodist began using WELCOME TO LIFE, patients indicated to Pittman that they believed BiOS was affiliated with Methodist. This confusion has caused damage to BiOS's reputation and goodwill.

### *Fraud and Abuse Under the False Claims Act*

36. During the period Pittman was under contract with the District, Pittman became concerned with the professional behavior of three of the District's other contracted physicians: Matthew Windrow, Zachary Windrow, and Richard Rowland.

37. These physicians practiced at the Hondo Clinic, which is adjacent to Medina Regional Hospital.

38. In summer 2011, Pittman reviewed many of the charts of Drs. Windrow and Dr. Rowland, which revealed minimal documentation for office visits. In addition, there were many instances of insufficient and incomplete charting—sometimes incomplete going as far back as a year.

39. Pittman also learned of an abnormally large number of patient visits for these doctors—as much as twice the number of patient visits by the other doctors that practiced at the Hondo Clinic.

40. One of the doctors was known as the "doorknob doctor" because of the short amount of time he often spent with patients—that is, he would enter an examination room while not taking his hand off of the doorknob to the examination room—only to evaluate the patient for a very short period of time. Many times, the examination would only be a couple of minutes and often without even touching the patient.

41. After his review, Pittman reported the fraudulent and abusive patterns of Drs. Windrow and Dr. Rowland to the Office of the Inspector General (OIG) for the Department of Health and Human Services.

42. Methodist and the District handled billing for Drs. Windrow and Dr. Rowland, and therefore knew (or should have known) of the impropriety of the physicians' actions.

43. The prior administration had also raised concerns about these doctors' practices.

44. In one 2010 staff meeting, Elaine Hussen—then the Administrator for the District's rural clinics—explained directly to these doctors that their actions would be discovered and that she didn't want anything to do with it.

45. Despite knowing of the impropriety of the physicians' actions, the District and Methodist submitted false claims to the Centers for Medicare and Medicaid Services.

46. In the summer 2011, Pittman expressed concerns of fraud and abuse to Steve Hackebeil, a board member of the District via a lengthy telephone conversation. Pittman also made known his intentions to report the fraud and abuse. Hackebeil made comments to Pittman that suggest Hackebeil was aware of the fraud and abuse problems.

47. After Methodist began management of the District, and while Pittman was still working for the District, Pittman had a lengthy conversation with Janice Simons, the District's new CEO, who was placed at the District by Methodist. This meeting was a closed-door meeting in Pittman's office. Pittman explained his concern about fraud and abuse to Simons, as well as other issues such as clinic operations. Pittman made known to Simons his intentions to report fraud and abuse.

*Violations of the Emergency Medical Treatment and Active Labor (EMTALA) Act*

48. Not long after Pittman began working with the District, he observed what he considered to be substandard care by Drs. Windrow and Dr. Rowland.

49. In response to one specific event that Pittman observed on April 6, 2013, Pittman wrote a letter to Janice Simons, the District's CEO, concerning those events.

50. Exhibit G is a true and correct copy of the letter from Pittman to Simons concerning the events the Pittman witnessed on April 6, 2013.

*Retaliation*

51. After Pittman reported the allegations of fraud to the OIG for the Department of Health and Human Services, and the EMTALA violations to Simons, the District took retaliatory action against him.

52. In March 2014, the District and Methodist, acting through Simons, terminated the

obstetric malpractice subsidy it provided to Pittman, even though this subsidy remained in place for the other doctors with hospital privileges.

53. As a result, Pittman could no longer perform obstetrics.

54. Pittman also concluded that having Drs. Windrow and Dr. Rowland cover Pittman's patients when he was not on call or out of town was going to jeopardize patient safety and patient confidentially.

55. In essence, Pittman has been forced out of obstetrics because Methodist condoned the behavior of a group of physicians who, unfortunately, were an integral part of Pittman's obstetrics practice.

## COUNT I and COUNT II
### Trademark Infringement Under 15 U.S.C. § 1125(a) and Texas Common Law

56. Each of the preceding paragraphs is incorporated by referenced under these Counts I and II.

57. BiOS has a protectable right in the federally-registered mark WELCOME TO LIFE in connection with medical clinics and related goods and services.

58. Methodist used BiOS's federally registered trademark WELCOME TO LIFE.

59. Methodist's use of WELCOME TO LIFE was in interstate commerce.

60. Methodist's use was likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Methodist with BiOS, or as to the origin, sponsorship, or approval of BiOS's services, or commercial activities by BiOS.

61. BiOS was damaged as a result of Methodist's use of WELCOME TO LIFE.

62. Methodist's infringing use of WELCOME TO LIFE was willful.

63. BiOS is entitled to recover Methodist's profits, BiOS's damages, and costs of the action under 15 U.S.C. § 1117.

64. This is an exceptional case entitling BiOS to its reasonable attorney's fees.

## COUNT III
### Retaliation Under the EMTALA (42 U.S.C. § 1395dd(i))

65. Each of the previous paragraphs is incorporated by reference under this Count III.

66. Pittman reported a violation of 42 U.S.C. § 1395.

67. Methodist and the District have penalized or taken adverse action against Pittman because he reported a violation of 42 U.S.C. § 1395.

68. Pittman has been damaged as a result of Methodist's and the District's acts.

## COUNT IV
### Retaliation Under the False Claims Act (34 U.S.C. § 3730(h)(1))

69. Each of the previous paragraphs is incorporated by reference under this Count IV.

70. Methodist and the District discriminated against Pittman in the terms and conditions of employment.

71. Methodist and the District discriminated against Pittman because of lawful acts done by Pittman in furtherance of an action (or other efforts) to stop one or more violations under Title 31, Subtitle III, Chapter 37 Subchapter III of the United States Code.

72. Pittman has been damaged as a result of this discrimination.

## COUNT V
### Federal Unfair Competition

73. Each of the previous paragraphs is incorporated by reference under this Count V.

74. Methodist and the District made false or misleading statements of fact about its

services.

75. The statements deceived, or had the capacity to deceive, a substantial segment of potential consumers of BiOS's services.

76. The deception was material in that it was likely to influence consumer's purchasing decisions.

77. The service is in interstate commerce.

78. Pittman and BiOS have been, and are likely to be, injured as a result of the statements.

## COUNT VI
### Tortious Interference With Prospective Relations Under Texas Law

79. Each of the previous paragraphs is incorporated by reference under this Count.

80. There was a reasonable probability that Pittman and BiOS would have entered into a business relationship with a third person—namely those patients who were scheduled to see Pittman at the Castroville Clinic, but were seen by another medical services provider.

81. Methodist and the District intentionally interfered with the relationship between Pittman and his actual or prospective patients.

82. Methodist's and the District's conduct was independently tortious or unlawful.

83. Pittman and BiOS suffered actual damage or loss as a result of Methodist's and the District's interference.

## PRAYER

Pittman and BiOS pray that:

(1) they be awarded their actual damages caused by Defendants' acts complained of

herein;

    (2)    they be awarded exemplary damages as permitted under the law;

    (3)    they be awarded Defendant's profits under 15 US.C. § 1117;

    (4)    their actual damages under 15 U.S.C. § 1117 be increased to the maximum extent allowed by law;

    (5)    they be awarded their reasonable attorney's fees; and

    (6)    they be awarded all other relief she to which they are entitled to at law or equity.

Dated: July 9, 2014

Respectfully submitted,

GUNN, LEE & CAVE, P.C.
300 Convent St., Suite 1080
San Antonio, Texas 78205
T: (210) 886-9500
F: (210) 886-9883

By: /s/ Ted D. Lee
Ted D. Lee
tlee@gunn-lee.com

ATTORNEYS FOR PLAINTIFFS ROBERT PITTMAN AND BIOS FAMILY CLINIC, P.A.